**FILED**

December 19, 2024

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY: _____ AM

DEPUTY

**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS,
DEL RIO DIVISION**

KIMBERLY RUBIO, Individually as
Wrongful Death Beneficiary and as
Representative of the Estate of A.A.R.,
deceased minor; FELIX RUBIO,
Individually as Wrongful Death
Beneficiary of A.A.R., deceased minor;
JAVIER CAZARES, Individually as
Wrongful Death Beneficiary of J.J.C.,
deceased minor; SANTA GLORIA
CAZARES, Individually as Wrongful Death
Beneficiary and as Representative of the
Estate of J.J.C., deceased minor;
KIMBERLY GARCIA, Individually as
Wrongful Death Beneficiary of A.J.G.,
deceased minor; RACHEL GARZA, Esq., as
Representative of the Estate of A.J.G.,
deceased minor; MIGUEL CERRILLO,
Individually and as Next Friend of M.I.C.,
minor; ABIGALE VELOZ, Individually and
as Next Friend of M.I.C., minor; ANA
RODRIGUEZ, Individually as Wrongful
Death Beneficiary and as Representative
of the Estate of M.Y.R., deceased minor;
JERRY MATA, Individually as Wrongful
Death Beneficiary of T.M.M., deceased
minor; VERONICA MATA, Individually as
Wrongful Death Beneficiary and as
Representative of the Estate of T.M.M.,
deceased minor; JESSIE RODRIGUEZ,
Individually as Wrongful Death
Beneficiary of A.G.R., deceased minor;
DEANNA GORNTO, Individually as
Wrongful Death Beneficiary and as
Representative of the Estate of M.G.M.,
deceased minor; MARIA MAGDALENE
GARCIA, Individually as Wrongful Death
Beneficiary and as Representative of the
Estate of N.A.B., deceased minor; JUAN
JULIAN BRAVO, Individually as Wrongful
Death Beneficiary of N.A.B., deceased
minor; VERONICA LUEVANOS,
Individually as Wrongful Death
Beneficiary and as Representative of the
Estate of J.N.S., deceased minor; JACOB
SILGUERO, Individually as Wrongful

CAUSE NO: 2:24-cv-00069-AM

COMPLAINT AGAINST OASIS
FOR DAMAGES

1.   Negligent Entrustment

2.   Punitive/Exemplary Damages

Jury Trial Demanded pursuant to Fed.
R. Civ. P. 38(b)

Removed from Case No. 2024-05-
35546-CV in the 38th Judicial District
Court of Uvalde County, Texas

Death Beneficiary of J.N.S., deceased
minor; APRIL ELROD, Individually as
Wrongful Death Beneficiary of and as
Representative of the Estate of M.L.E.,
deceased minor; JOSE LUEVANOS,
Individually as Wrongful Death
Beneficiary and as Representative of the
Estate of J.C.L., deceased minor;
CHRISTINA LUEVANOS, Individually as
Wrongful Death Beneficiary of J.C.L.,
deceased minor; JENNIFER LUGO,
Individually as Wrongful Death
Beneficiary and as Representative of the
Estate of E.A.G., deceased minor; STEVEN
GARCIA, Individually as Wrongful Death
Beneficiary of E.A.G., deceased minor;
ALYSSA RODRIGUEZ, Individually as
Wrongful Death Beneficiary of J.M.F.,
deceased minor; EVADULIA ORTA,
Individually as Wrongful Death
Beneficiary and as Representative of the
Estate of R.F.T., deceased minor; MANDY
MARIE RENFRO, Individually as Wrongful
Death Beneficiary of U.S.G., deceased
minor; DAVID BALMER, Esq., as
Representative of the Estate of U.S.G.,
deceased minor; ELI TORRES,
Individually as Wrongful Death
Beneficiary of E.T., deceased minor; JOSE
MARTINEZ, Individually and as Next
Friend of A.J.M., minor; KASSANDRA
CHAVEZ, Individually and as Next Friend
of A.J.M., minor; VINCENT SALAZAR, III,
Individually as Wrongful Death
Beneficiary and as Representative of the
Estate of L.M.S., deceased minor;
MELINDA ALEJANDRO, Individually as
Wrongful Death Beneficiary of L.M.S.,
deceased minor,

     *Plaintiffs*,

v.

DANIEL DEFENSE, LLC; DANIEL DEFENSE
HOLDINGS, LLC; M.C. DANIEL GROUP, INC.;
FIREQUEST INTERNATIONAL, INC.; FLASH
CO., INC.; EOTECH, LLC; PROJECT ECHO
HOLDINGS, LLC D/B/A AMERICAN

2

**HOLOPTICS; KOUCAR MANAGEMENT, LLC;**
**and OASIS OUTBACK, LLC,**
     *Defendants.*

## OASIS OUTBACK, LLC'S REPLY IN SUPPORT OF MOTION TO DISMISS

Congress foresaw that there would be efforts, including in the wake of tragedies like this one, to impose liability on firearms manufacturers, dealers, and sellers based on the criminal misuse of their products by third parties.  Congress precluded such lawsuits through the Protection of Lawful Commerce in Arms Act ("PLCAA"), 15 U.S.C. § 7901 et seq.  The PLCAA does not just foreclose liability; it protects defendants like Oasis from the cost of defending these suits altogether.  *In re Academy, Ltd.*, 625 S.W.3d 19, 35–36 (Tex. 2021) ("*Academy*") (PLCAA barred claims against dealer related to mass shooting).

The PLCAA requires dismissal in this case.  Plaintiffs' lawsuit falls squarely within the definition of a qualified civil liability action, and none of the PLCAA's exceptions apply to permit any claim otherwise barred to proceed.  *See* 15 U.S.C. §§ 7903(5)(A)(i)–(vi).

### ARGUMENT AND AUTHORITIES

The PLCAA was enacted in 2005 with bipartisan support.  When Congress enacted the PLCAA, it made a number of findings supporting the PLCAA's necessity, including:

- Lawsuits have been commenced against manufacturers, distributors, dealers and importers of firearms that operate as designed and intended which seek money damages and other relief for the harm caused by the misuse of firearms by third parties, including criminals.

- Businesses in the United States that are engaged in interstate and foreign commerce through the lawful design, manufacture, marketing, distribution, importation, or sale to the public of firearms or ammunition products that have been shipped or transported in interstate or foreign commerce are not, and should not, be liable for the harm caused by those

4

who criminally or unlawfully misuse firearm products or ammunition products that function as designed and intended.

15 U.S.C. §§ 7901(a)(3), (a)(5).

The PLCAA "creates a substantive rule of law granting immunity to certain parties against certain types of claims." *Academy*, 625 S.W.3d at 19, 34 (quoting *Ileto v. Glock, Inc.*, 565 F.3d 1126, 1142 (9th Cir. 2009)). The "certain type" is any claim meeting the definition of a "qualified civil liability action" for which the PLCAA does not recognize an exception. 15 U.S.C. § 7902(a). In this way, the PLCAA serves as a filter. *See Woods v. Steadman's Hardware, Inc.*, No. CV 12-33-H-CCL, 2013 WL 709110, at *10–11 (D. Mont. Feb. 26, 2013) (explaining that a plaintiff's claims must meet an exception listed in the PLCAA, "i.e., pass the PLCAA filter"). If a lawsuit meets the definition of a "qualified civil liability action," all causes of action must be immediately dismissed except for causes of action that are recognized within one of the PLCAA's six enumerated exceptions. Only claims that fit within one of the exceptions may proceed past the initial pleadings or motion stage. 15 U.S.C. § 7903(5)(A). Ultimately, assessing whether the PLCAA applies is a two-step process: (1) whether the claim is a "qualified civil liability action" and (2) if so, whether any of the exceptions of the PLCAA apply to permit an otherwise barred claim to proceed.

Plaintiffs reverse this analysis, briefing the threshold issue of immunity last. Rather than address the PLCAA and the filter Congress erected first, Plaintiffs brief a common-law negligence theory not found among the PLCAA's enumerated exceptions and repeatedly reference it as the "*Peek*" rule, relying on a San Antonio Court of Appeals decision that pre-dates both the PLCAA and the Texas Supreme

5

Court's decision in *Academy*.  Dkt. 64 (citing *Peek v. Oshman's Sporting Goods, Inc.*, 768 S.W.2d 841, 845 (Tex. App.—San Antonio 1989, writ denied)).

Settled law holds the PLCAA forecloses common-law negligence claims.  *Infra* at Section V.  And, to the extent *Peek* recognized negligent entrustment as a subset of negligence, *Academy* confirms that theory is not viable in Texas, preventing Plaintiffs from relying on the PLCAA's negligent entrustment exception.  *Infra* at Section V.

This Reply reorders the arguments to match the PLCAA, first addressing why Plaintiffs have pleaded a qualified civil liability action and then addressing why Plaintiffs' claims cannot meet the negligent entrustment exception—the *only exception* at issue in this case.

## I.     The PLCAA applies because this is a "qualified civil liability action."

As defined by the PLCAA, and subject to six limited exceptions, a "qualified civil liability action" is "a civil action . . . brought by any person against a manufacturer or seller of a qualified product . . . for damages . . . resulting from the criminal or unlawful misuse of a qualified product by the person or a third party."  15 U.S.C. § 7903(5)(A).

The PLCAA defines a "seller" as including a federally licensed firearms dealer, and a person engaged in the business of selling firearms or ammunition.  15 U.S.C.

6

§§ 7903(6)(B)[1] & (C)[2]. The PLCAA defines a "qualified product" as "a firearm (as defined in subparagraph (A) or (B) of section 921(a)(3) of Title 18), including any antique firearm (as defined in section 921(a)(16) of such title), or ammunition (as defined in section 921(a)(17)(A) of such title), or a component part of a firearm or ammunition, that has been shipped or transported in interstate or foreign commerce." 15 U.S.C. § 7903(4).

Plaintiffs pleaded a "qualified civil liability action." This is a civil action for damages resulting from the Shooter's criminal use of a qualified product. The Plaintiffs seek civil damages from Oasis for the Shooter's crimes, and the Shooter committed his crimes using "<u>a</u> qualified product"—which is defined to include

---

[1]     Defining a "seller" as "a dealer (as defined in section 921(a)(11) of Title 18) who is engaged in the business as such a dealer in interstate or foreign commerce and who is licensed to engage in business as such a dealer under chapter 44 of Title 18." 15 U.S.C. § 7903(6)(C). 18 U.S.C. § 921(a)(11), in turn, defines a "dealer" as follows: "(11) The term "dealer" means (A) any person engaged in the business of selling firearms at wholesale or retail, (B) any person engaged in the business of repairing firearms or of making or fitting special barrels, stocks, or trigger mechanisms to firearms, or (C) any person who is a pawnbroker." For purposes of a "dealer," the term "engaged in the business" "has the meaning given to that term in Section 921(a)(21) of title 18." 15 U.S.C. § 7903(1). 18 U.S.C. §§ 921(a)(21)(C) and (D), in turn, define the term "engaged in the business" relative to a dealer as defined by 18 U.S.C. § 921(a)(11)(A) as a "a person who devotes time, attention, and labor to dealing in firearms as a regular course of trade or business to predominantly earn a profit through the repetitive purchase and resale of firearms, but such term shall not include a person who makes occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection or for a hobby, or who sells all or part of his personal collection of firearms," and, relative to a dealer as defined in section 921(a)(11)(B), "a person who devotes time, attention, and labor to engaging in such activity as a regular course of trade or business with the principal objective of livelihood and profit, but such term shall not include a person who makes occasional repairs of firearms, or who occasionally fits special barrels, stocks, or trigger mechanisms to firearms."

[2]     Defining "seller" to include "a person engaged in the business of selling ammunition (as defined in section 921(a)(17)(A) of Title 18) in interstate or foreign commerce at the wholesale or retail level."

7

firearms, ammunition or a component part of a firearm or ammunition.  15 U.S.C. § 7903(4) (emphasis added); *see also* Dkt. 53 at pgs. 6–8 and Dkt. 45 at pgs. 10–12.[3]

Further, Oasis is a "seller" of a qualified product.  *See* 15 U.S.C. § 7903(6)(C) (defining "seller"); 15 U.S.C. § 7903(1) (defining "engaged in business"); *see also* 18 U.S.C. §§ 921(a)(11) & (21).  Oasis holds a federal firearms license ("FFL") to deal in firearms.[4]  Plaintiffs allege Oasis sold a Smith & Wesson AR-15 to the Shooter, along with ammunition, and that Oasis transferred a Daniel Defense rifle to the Shooter. Dkt. 9 at ¶¶ 397, 402–03, 563, 567, 571.  They also plead Oasis is "a licensed seller of firearms" engaged in the relevant business and facts supporting its status as a "dealer" "engaged in business" as a "dealer in firearms."  *Id.* ¶¶ 65, 243, 554, 563 (alleging Oasis is a "licensed seller" and a gun store and transferred qualified products); 15 U.S.C. §§ 7903(6)(b) & (c); 18 U.S.C. §§ 921(a)(21)(C) & (D).  Plaintiffs' Response also repeatedly references Oasis as a "sporting goods store" and "seller" of firearms, making it a "seller" for purposes of the PLCAA.  Dkt. 64.

Accordingly, the PLCAA applies to this case and bars any claim not falling within one of its exceptions.

---

[3]     Oasis incorporates Dkt. 53 at pgs. 6–8 and Dkt. 45 at pgs. 10–12 by reference as though set forth fully herein.

[4]     Oasis's license can be verified through the ATF's list of all FFL holders (https://www.atf.gov/firearms/listing-federal-firearms-licensees/complete) (last visited Nov. 5, 2024), of which this Court can take judicial notice pursuant to Rule 201 of the Federal Rules of Evidence.

## II.   The PLCAA applies regardless of whether Oasis received money in connection with the transfer of the DDM4v7 or the sight.

The PLCAA erects a complete bar for qualified civil liability actions.  Its text does not support a product-by-product application of immunity and Plaintiffs point to no authority supporting such an interpretation.  Nevertheless, Plaintiffs ask the Court to do exactly that.  Plaintiffs agree the PLCAA applies—at least with respect to Oasis's sale and transfer of a Smith & Wesson AR-15 and ammunition to the Shooter—requiring Plaintiffs to meet an exception to the PLCAA.  *See, e.g.*, Dkt. 9 at ¶¶ 555–58 (arguing claims meet exception to PLCAA); Dkt. 64 at pgs. 20–24.

Plaintiffs assert, however, that their claims fall outside the PLCAA with respect to two products: the DDM4v7 and EOTech sight.  They argue Oasis is not a "seller" for purposes of *those products* within the meaning of the PLCAA and that the EOTech sight is not a "qualified product" within the meaning of 15 U.S.C. § 7903(4).  Dkt. 64 at pgs. 24–39.  Of course, the major premise of Plaintiffs' claim is flawed because there is no product-by-product analysis involved in the PLCAA.  But, even its other premises do not withstand scrutiny.

### A.   The PLCAA does not have a "sale" requirement.

Without any support from the PLCAA's definitions, structure, or purpose, Plaintiffs argue the PLCAA contains a "sale" requirement.  *See* Dkt. 64 at pgs. 24–30.  They contend Oasis did not receive payment from the Shooter for the DDM4v7 and EOTech sight; and, therefore, Oasis did not "sell" those products to the Shooter

and the PLCAA does not apply (presumably, with respect to any claim that is causally linked only to those products).[5]  *See id.*  That argument fails.

The PLCAA bars a certain type of claim against a certain kind of defendant. The Congressional findings supporting the PLCAA's enactment make that clear.  15 U.S.C. §§ 7901(a)(3), (a)(5).  The PLCAA's definitions do, too.  15 U.S.C. § 7903(5)(A); §§ 7903(6)(b) & (c).  Stated simply, the PLCAA bars actions against sellers of "qualified products" for damages resulting from the criminal misuse of "qualified products."  *See* 15 U.S.C. § 7903.

The PLCAA defines "qualified civil liability action" as follows:

> ***[A] civil action or proceeding . . . brought by any person against a manufacturer or seller of a qualified product,*** . . . for damages, punitive damages, injunctive or declaratory relief, abatement, restitution, fines, or penalties, or other relief, resulting from the criminal or unlawful misuse of ***a qualified product*** by the person or a third party . . . .

15 U.S.C. § 7903(5)(A) (emphasis added).

The PLCAA defines a "seller" to include "a dealer . . . who is engaged in the business as such a dealer in interstate or foreign commerce and who is licensed to engage in business as such a dealer under chapter 44 of Title 18" (i.e., the Gun Control Act of 1968 ("GCA")), and "a person engaged in the business of selling ammunition . . . at the wholesale or retail level."  15 U.S.C. §§ 7903(6)(b) & (c). Section 921(a)(11), in turn, defines "dealer" in part as "any person engaged in the

---

[5]      The PLCAA erects a complete bar for qualified civil liability actions.  Its text does not support a product-by-product application of immunity and Plaintiffs point to no authority supporting such an interpretation.  This is another reason why Plaintiffs' argument fails.

business of selling firearms at wholesale or retail." 18 U.S.C. § 921(a)(11). A "qualified product," in turn, includes firearms, ammunition, *or* "component part[s] of a firearm or ammunition, that has been shipped or transported in interstate or foreign commerce." *Id.* § 7903(4).

Oasis is a federal firearms licensee and dealer, which is enough to support the application of the PLCAA to the claims in this case. *See* Dkt. 9 at ¶¶ 65, 422, 554, 563; *see supra* at note 4. But even if that were not enough, it is undisputed that Oasis sold one rifle (the Smith & Wesson AR-15) and some of the ammunition at issue in this case.[6] *See* Dkt. 9 at ¶¶ 402–03, 564, 567; Dkt. 30 at pgs. 5–7. Accordingly, Plaintiffs plead a "qualified civil liability action," *supra* at Section I, making the issue of whether Oasis *also* sold the DDM4v7 or the EOTech sight irrelevant. *Hendrick v. Academy I, LP*, No. WD 86911, __ S.W.3d __, 2024 WL 4594958, at *1 (Mo. Ct. App. Oct. 29, 2024); *see also* Dkt. 44 at pgs. 5–11.[7]

The PLCAA does not contain a "sale" requirement. *Hendrick v. Academy I, LP* is instructive. 2024 WL 4594958 at *1. There, an individual at Academy's gun counter told an employee he was interested in seeing a handgun. *Id.* at *1. The Academy employee retrieved the handgun and "handed control of it to the individual to look over, handle and inspect." *Id.* The employee did not run a background check on the individual before providing the gun to him. *Id.* After handling the gun, the

---

[6]     Plaintiffs did not plead the Shooter used only the DDM4v7 in committing his crimes. *Contra* Dkt. 64 at pg. 26.

[7]     Oasis incorporates Dkt. 44 at pgs. 5–11 by reference as though set forth fully herein.

individual said he wished to proceed with the sale and placed a box of ammunition on the gun counter.  *Id.*  The employee left the gun on the counter within the would-be purchaser's reach along with the ammunition while the employee proceeded to run a background check, which came back "denied."  *Id.*  The individual then opened his coat, jumped over the counter, pulled out a knife, grabbed the gun and ammunition, and fled the store.  *Id.* at *2.  He ran to his vehicle, drove to a car dealership, and shot Jody Hendrick, causing severe injuries.  *Id.*  Hendrick sued Academy, claiming that Academy was negligent in, among other things, making the gun accessible to his assailant and failing to secure the area while its employee conducted a background check.  *Id.*  Academy moved to dismiss, arguing the PLCAA conferred immunity against Hendrick's claims.  *Id.*  In response, Hendrick argued the PLCAA did not apply because Hendrick did not allege a "sale" of a firearm—rather, the shooter stole the firearm from Academy.  *Id.* at *3.  The trial court dismissed Hendrick's claims and the court of appeals affirmed.

The court of appeals flatly rejected Hendrick's argument that the PLCAA requires an action "be against the seller for the sale of a qualified product."  *Id.* at *3.  The court explained:

> The primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute. Nothing in the PLCAA's definition of a qualified civil liability action refers to immunity applying only when a qualified product is sold. Hendrick provides no authority or support for his assertion, and his emphasized phrase "sale of a qualified product" is not found in the definition of "qualified civil liability action."  "In construing a statute, courts cannot add statutory language where it does not exist; rather, courts must interpret the statutory language as written by the legislature."  Under the plain language of the PLCAA, immunity is

4931-8679-3478.1

provided to manufacturers and sellers of qualified products regardless of whether a sale was made.

*Id.*; accord *Estate of Kim ex rel. Alexander v. Coxe*, 295 P.3d 380 (Alaska 2013).

Because "immunity is provided to manufacturers and sellers of qualified products regardless of whether a sale was made," it is immaterial whether Oasis received remuneration for the sale of the DDM4v7 or EOTech sight. *Hendrick*, 2024 WL 4594958, at *3.

### B. The PLCAA's definition of "seller" defeats a sale requirement.

The PLCAA's plain language and settled law also defeat Plaintiffs' argument.

The PLCAA's definition of a "seller" incorporates the GCA's definitions of "dealer" and "engaged in the business." 15 U.S.C. § 7903(1); 15 U.S.C. §§ 7903(6)(b) & (c). According to the GCA:

> (11) The term "dealer" means (A) any person engaged in the business of selling firearms at wholesale or retail, (B) any person engaged in the business of repairing firearms or of making or fitting special barrels, stocks, or trigger mechanisms to firearms, or (C) any person who is a pawnbroker. The term "licensed dealer" means any dealer who is licensed under the provisions of this chapter.

18 U.S.C. § 921(a)(11).

The GCA defines "engaged in business," "as applied to a dealer in firearms," to mean "a person who devotes time, attention, and labor to dealing in firearms as a regular course of trade or business to predominantly earn a profit through the repetitive purchase and resale of firearms . . . ." 18 U.S.C. § 921(a)(21)(C). Additionally, as applied to a dealer, "engaged in the business" means, in relevant part, "a person who devotes time, attention, and labor to engaging in such activity as

13

a regular course of trade or business with the principal objective of livelihood and profit . . . ." 18 U.S.C. § 921(a)(21)(D).

Courts have long understood that these definitions do not contain a profit-making requirement. *United States v. Shirling*, 572 F.2d 532, 534 (5th Cir. 1978). According to the Fifth Circuit, the term is more flexible. "Anyone is engaged in the business of dealing in firearms if they have guns on hand or are ready and able to procure them, in either case for the purpose of selling some or all of them to such persons as they might from time to time conclude to accept as customers." *Shirling*, 572 F.2d at 534 (adopting and quoting *United States v. Jackson*, 352 F. Supp. 672, 674 (S.D. Ohio 1972), aff'd without opinion, 480 F.2d 927 (6th Cir. 1973)).

The definition of a "dealer," as used in the PLCAA and GCA, is concerned with the type of business conducted by the defendant—not whether the defendant received money for the sale of a specific product (as opposed to transferring it under federal laws permitting such a transfer). Although Plaintiffs claim otherwise, "[t]here appears to be little doubt that 'dealer' [as used in the GCA] means anyone who is engaged in any business of selling firearms, and that 'business' is that which occupies time, attention and labor for the purpose of livelihood or profit." *United States v. Gross*, 451 F.2d 1355, 1357 (7th Cir. 1971). A person is a "dealer" under the GCA (and, therefore, entitled to immunity under the PLCAA for qualified actions) if they have the relevant products on hand. *See United States v. Carter*, 801 F.2d 78, 81 (2d Cir. 1986) (persons were "dealers" where they had guns on hand or were ready and able to procure them to sell periodically). Oasis satisfies the test.

14

## C.    Reading a "sale" requirement into PLCAA would lead to absurd results.

Finally, accepting Plaintiffs' argument would lead to absurd results.  Start with Plaintiffs' suggestion that Oasis could be liable for *transferring* one AR-15 (the DDM4v7) but did not act negligently in *selling* another (the Smith & Wesson).  *See* Dkt. 64 at pgs. 24–30.  But there are other, obvious problems with imposing a sale requirement on the PLCAA.

The PLCAA undisputedly covers persons licensed as dealers.[8]  15 U.S.C. §§ 7903(6)(b) & (c).  A federal firearms license is required for anyone "engage[d] in the business of importing, manufacturing, or dealing in firearms."  That business involves more than sales.  Dealers routinely "transfer" and "dispose of" firearms.  A licensee or dealer must keep accurate and detailed "records of importation, production, shipment, receipt, sale, or *other disposition* of firearms. . . ."  18 U.S.C. § 923(g)(1)(A) (emphasis added).

For example, to legally buy and have a gun shipped from an Internet seller in another state, the transfer must be made through a federal firearms licensee in the buyer's state.  *See* 18 U.S.C. §§ 922(a)(1)–(3), (b)(3).  The seller will deliver the firearm to a federal firearms licensee for transfer to the buyer.  *See* 18 U.S.C. § 922.  The buyer (who usually will pay the seller directly) still must go to his home-state federal

---

[8]    Plaintiffs recognize that federal firearms licensees are covered by the PLCAA in their response to FireQuest's motion to dismiss.  Dkt. 59 at pg. 3, n.1.  While the PLCAA covers manufacturers and other qualifying "sellers," Plaintiffs agree it applies to federal firearms licensees like Oasis, stating "Firequest does not claim PLCAA protection, and it cannot, because it is not a federal firearms licensee." *Id.*  The Court should not permit Plaintiffs to take the inconsistent position that Oasis is not entitled to PLCAA protection when it is undisputed that Oasis is a federal firearms licensee.

firearms licensee and fill out a Form 4473 (which requires the buyer to represent that he is not a criminal, domestic abuser, etc.). *See id.* Then, the home state federal firearms licensee (here, Oasis) must call the National Instant Check System ("NICS") and read off the buyer's information from Form 4473, including a partial social security number. 18 U.S.C. § 922(t). NICS determines whether the buyer is disqualified from owning the gun. *See id.* If the buyer is approved by NICS, the federal firearms licensee is given an approval number to write on the Form 4473. With this approval, the buyer may take delivery of the firearm. 18 U.S.C. §§ 921–931. In return for this transfer, the home-state federal firearms licensee (here, Oasis) charges a small fee.

Federal law regulates this activity. Dealers are required to run background checks, 18 U.S.C. § 922(t), and complete transaction record forms, 18 U.S.C. § 922(m); 27 C.F.R. § 478.124. Federal law precludes transfers if the transferor knows or has cause to believe the transferee is disqualified from possessing a firearm. 18 U.S.C. § 922(d). Each of these laws apply to "transfers" or "disposals" of firearms in addition to sales. 18 U.S.C. § 922(t) (requiring that licensed dealers conduct background checks before transferring firearms); 27 C.F.R. § 478.124 (requiring a firearm transaction record, Form 4473, before a licensed dealer disposes of a firearm); 18 U.S.C. § 922(d) (barring sales and disposals of firearms when there is reasonable cause to believe the transferee cannot legally receive the firearm).

A well-pled violation of a state or federal statute is one of the PLCAA's exceptions. 15 U.S.C. § 7903(5)(a)(iii). Adding a sale requirement to the PLCAA

16

would eliminate the predicate exception where the claim is based on a dealer's violations of these laws.  The Court should resist such an absurd result.

Nothing in the PLCAA's definition of a prohibited qualified civil liability action refers to immunity applying only when a qualified product is sold.  Oasis is engaged in the lawful commerce of the distribution or sale of firearms.  Oasis has an FFL and is a licensed dealer.  The plain language of the PLCAA protects parties that are generally engaged in such commerce to be protected from litigation, not specifically in the course of an actual distribution or sale.  Offering firearms and ammunition for sale constitutes "commerce," and there can be no reasonable dispute that Oasis satisfies the PLCAA's relevant definitions.  Oasis was acting as a licensed dealer when it executed the transfers at issue in this case.  Because Plaintiffs pleaded a "qualified civil liability action" and Oasis meets the PLCAA's definition of a "seller," the PLCAA applies to Plaintiffs' claims irrespective of whether Oasis sold the DDM4v7 or the EOTech sight.

## III.   The PLCAA applies regardless of whether the EOTech sight is a "qualified product," although it meets that definition.

The PLCAA bars actions against sellers of "qualified products" for damages resulting from the criminal misuse of "qualified products."  15 U.S.C. § 7901 et seq. The claims in this cause meet that definition, making the status of the EOTech sight as a "qualified product" irrelevant.

But even if the EOTech sight's status as a "qualified product" were relevant under the plain text of the statute—it is not—the sight is plainly a "qualified

product."[9]  *See also* Dkt. 53, Dkt. 54 at pgs. 11–15, and Dkt. 44 at pgs. 5–16.  Again, the PLCAA defines a "qualified product" as one of three things:  (1) a firearm as defined by the federal Gun Control Act ("GCA"), (2) ammunition as defined by the GCA, or (3) "*a component part* of a firearm" or ammunition.  15 U.S.C. § 7903(4) (emphasis added).  Because the PLCAA does not define "component part," courts must look to the ordinary meaning.  *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175–76 (2009).

Under Section 7903(4), "component" is used as an adjective to mean "serving or helping to constitute."[10]  Its synonym is "constituent."[11]  *See Microsoft Corp. v. AT&T Corp.*, 550 U.S. 437, 449 n.11 (2007) ("'Component' is commonly defined as 'a constituent part,' 'element,' or 'ingredient'") (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE 466 (1981)); *United States v. Gonzalez*, 792 F.3d 534, 537 (5th Cir. 2015) ("[T]he common meaning of 'component,' . . . is 'a part or element of a larger whole, especially a part of a machine or vehicle'") (quoting OXFORD DICTIONARY OF ENGLISH 357 (3d ed. 2010)).  Further, the word "part" is defined as "one of the often indefinite or unequal subdivisions into which something is or is regarded as divided and which together constitute the

---

[9]     Oasis incorporates Dkt. 53, Dkt. 54 at pgs. 11–15, and Dkt. 44 by reference as though set forth fully herein, including their response to Plaintiffs' inapt locksmith hypothetical.

[10]     *Component*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/component (last accessed Aug. 12, 2024).

[11]     *Id.*

whole,"[12] or "an essential portion or integral element."[13]  A firearm's sight satisfies these definitions because it is an integral element of a firearm.  *See Lowy v. Daniel Def., LLC*, No. 1:23-CV-1338, 2024 WL 3521508, at *3 (E.D. Va. July 24, 2024) (rejecting claim that after-market magazines and grips are not component parts of firearm and stating "when a firearm user substitutes the original components of their firearm for defendants' magazines and grips, defendants' magazines and grips then become component parts of the newly assembled firearm.").  This is particularly true for the outdoorsman accustomed to relying on sights for hunting large game at a distance and for safely operating a firearm.  And, while Plaintiffs scoff at the notion, a scope is more necessary to safely operate a firearm than other components considered to be "firearms" or their "component parts," which include items like a silencer.  18 U.S.C. § 921(a)(3) (defining firearm under the GCA to frame or receiver muffle and silencer); *United States v. Gonzalez*, 792 F.3d 534, 537 (5th Cir. 2015) (holding that an AK-47 magazine "comports with the common meaning of 'component'").

A part that facilitates such an essential function is plainly a "component" part.  To that end, the *Prescott* court held an after-market bump stock was a "qualified product," because a stock is integral to performing an essential function—firing the rifle from the shoulder.  341 F. Supp. 3d at 1189 ("Thus, it follows that upon

---

[12]    *Part*,    Merriam-Webster    Dictionary,    https://www.merriam-webster.com/dictionary/part (last accessed Aug. 12, 2024).

[13]    *Id.*; *see Prescott v. Slide Fire Sols., LP*, 341 F. Supp. 3d 1175, 1189 (D. Nev. 2018) (same).

installation, the bump stock is a rifle's operative stock and, therefore, becomes an integral part of a rifle.") (citations omitted). The same is true of a sight, which permits safe and effective firing at different ranges. Courts have confirmed the straightforward conclusion that such parts are component parts for purposes of the PLCAA. *See, e.g., Lowy v. Daniel Defense, LLC*, No. 1:23-cv-1388-CMH-IDD, 2024 WL 3521508, at *3 (E.D. Va. July 24, 2024) (holding aftermarket magazines and grips installed on a rifle, "become component parts of the newly assembled firearm" for purposes of immunity under the PLCAA); *Prescott v. Slide Fire Sols., LP*, 341 F. Supp. 3d 1185, 1189 (D. Nev. 2018) (aftermarket stock qualified product under PLCAA); *Academy*, 625 S.W.3d at 29 (magazine qualified product under PLCAA).

The ATF's interpretation supports this conclusion. *See* Dkt. 53, EOTech Mot. to Dismiss. Courts across the country agree that the ATF's GUIDEBOOK—IMPORTATION & VERIFICATION OF FIREARMS, AMMUNITION, AND IMPLEMENTS OF WAR (the "Guidebook") is an authoritative source. *See Prescott*, 341 F. Supp. 3d at 1189.[14] Courts have held that bump stocks, grips, and magazines are all component parts of a firearm and, thus, "qualified products" under the PLCAA. *See Prescott*, 341 F. Supp. 3d at 1190 (bump stock); *Academy*, 625 S.W.3d at 29 (magazine); *Lowy*, 2024 WL 3521508, at *3 (grip and magazine). All of these are identified as parts in the Guidebook.

---

[14]    The Guidebook is available on the ATF's website at: https://www.atf.gov/firearms/docs/guide/atf-guidebook-importation-verification-firearms-ammunition-and-implements-war. Because it is a publicly available government document, the Court may take judicial notice of it. *Prescott*, 341 F. Supp. 3d at 1188 n.2.

The same is true of sights. Under a section titled "Terminology & Nomenclature," the ATF explains different types of firearms and identifies significant parts. For "semi-automatic rifles," the ATF identifies a sight as an integral part of a rifle:



*See* Guidebook, Terminology & Nomenclature, at 8 (highlight added).

Likewise, for every other type of firearm discussed in this section of the Guidebook, the ATF identifies a sight as a fundamental part of the weapon. *See id.* at 3 (handgun); *id.* at 4 (revolver); *id.* at 5 (bolt action rifle/shotgun/pistol); *id.* at 7 (lever action rifle/shotgun/pistol); *id.* at 9 (pump action rifle/shotgun). The ATF also

specifically distinguishes sights and scopes as firearm "parts" as compared to firearm "accessories":

> The Department of Commerce regulates the exportation of sporting shotguns, shotgun parts, sporting shotgun ammunition, firearm-type accessories **and certain parts** (e.g. **sights, scopes, and mounts**).

*See* ATF Guidebook, Policies and Procedures at 3, ¶ 9 (emphasis added).

The purpose and content of the PLCAA also inform the conclusion that a sight is a component part of a firearm. *Davis*, 489 U.S. at 809 (noting that words of a statute are to be "read in their context and with a view to their place in the overall statutory scheme"). First, on its face, the PLCAA creates no distinction between an "accessory" or other "component parts" of a completed firearm. Congress could have created that distinction, but elected not to do so for purposes of conferring immunity. Second, Congress expressly found that manufacturers and sellers of firearms and component parts for firearms "are not, and should not, be liable for the harm caused by those who criminally or unlawfully misuse firearm products or ammunition products that function as designed and intended." 15 U.S.C. § 7901(a)(5). In fact, the PLCAA's stated purpose is "[t]o prohibit causes of action against manufacturers, distributors, dealers, and importers of firearms or ammunition products, and their trade associations, for the harm solely caused by the criminal or unlawful misuse of firearms products or ammunition products by others when the product functioned as designed and intended." *Id.* § 7901(b)(1).

The PLCAA is intended to provide broad protections to the firearms industry and to prevent lawsuits arising from the criminal misuse of lawfully manufactured and sold products. *See, e.g., Ileto v. Glock, Inc.*, 421 F. Supp. 2d 1274, 1285 (C.D. Cal.

22

2006).  Concluding that a sight is a component part of a firearm is consistent with the intent and purpose of the PLCAA.  Following Plaintiffs' rationale, the PLCAA would not apply to manufacturers of aftermarket component parts of firearms (sights), which would clearly run counter to both the text and purposes of the PLCAA.  The PLCAA does not recognize any such distinction and it is not the province of the Court to judicially recognize one.

The only court to disagree that a sight is a component part of a firearm was not addressing the PLCAA, but rather construing the meaning or definition of the terms "parts" and "accessories" for purposes of excise taxes.  *Auto-Ordnance Corp. v. United States*, 822 F.2d 1566, 1570 (Fed. Cir. 1987).  The Texas Supreme Court has warned against relying on such cases when construing legislation directed to Second Amendment rights.  *See Academy*, 625 S.W.3d at 26 (rejecting reliance on trade cases to interpret Gun Control Act).

The PLCAA was enacted to prevent this precise type of lawsuit, and the Act's purposes would not be furthered by following Plaintiffs' legally unsupported argument.  Therefore, the PLCAA applies to this case.

## IV. Texas does not recognize a claim for negligent entrustment, making that exception inapplicable.

Plaintiffs do not point to any exception to the PLCAA that would permit their claims for common law negligence, Dkt. 9 at ¶¶ 553–72, or gross negligence, Dkt. 9 at ¶¶ 573–76, to proceed.  Accordingly, those claims must be immediately dismissed.

23

Plaintiffs attempt to fit their claims under the exception in the PLCAA that allows certain claims for negligent entrustment to proceed.[15]  *See* Dkt. 9 at ¶ 557; Dkt. 64 at pgs. 20–24; 15 U.S.C. § 7903(5)(A)(ii).  Their argument is a non-starter. *Academy*, 625 S.W.3d at 30 (Texas does not recognize claim for negligent entrustment; therefore, PLCAA bars claim).

The PLCAA defines "negligent entrustment" as:

> the supplying of a qualified product by a seller for use by another person when the seller knows, or reasonably should know, the person to whom the product is supplied is likely to, and does, use the product in a manner involving unreasonable risk of physical injury to the person or others.

15 U.S.C. § 7903(5)(B).  However, the PLCAA also provides "no provision of this [statute] shall be construed to create a public or private cause of action."  *Id.* § 7903(5)(C); *see also* Dkt. 45 at pgs. 10–12.[16]  "Accordingly, courts apply state law on negligent entrustment claims in evaluating whether the exception applies." *Academy*, 625 S.W.3d at 30 (citing *Prescott v. Slide Fire Sols., LP*, 410 F. Supp. 3d 1123, 1139 (D. Nev. 2019) as noting "[b]ecause the PLCAA does not 'create a public or private cause of action or remedy,' courts look to state law" in determining whether the negligent entrustment exception applies); citing *Phillips v. LuckyGunner, LLC*, 84 F. Supp. 3d 1216, 1225 (D. Colo. 2015) ("[a]lthough the PLCAA identifies negligent

---

[15]    To the extent Plaintiffs' common law negligence claim, Dkt. 9 at ¶¶ 553–72, rests on similar allegations, it is barred for the same reason Plaintiffs' negligent transfer claim is barred.

[16]    Oasis incorporates Dkt. 45 at pgs. 10–12 by reference as though set forth fully herein.

entrustment as an exception to immunity, it does not create the cause of action. Accordingly, the claim arises under state law.")).

There is no federal common law, and the PLCAA creates no cause of action; therefore, such a cause of action must arise under state law. *See* 15 U.S.C. § 7903(5)(C) ("no provision of this chapter shall be construed to create a public or private cause of action or remedy"); *LuckyGunner*, 84 F. Supp. 3d at 1225 (stating that any claim that falls within the exception must arise under state law).

Texas does not recognize a claim for negligent entrustment. The Texas Supreme Court's opinion in *Academy* (another case stemming from a mass shooting) is clear:

> [W]e agree with Academy that no viable cause of action exists under Texas law for negligent entrustment based on a sale of chattel. In turn, we hold that the plaintiffs may not rely on the negligent-entrustment exception to pursue their claims. Absent an applicable exception, the plaintiffs' suits are qualified civil liability actions that "may not be brought." 15 U.S.C. § 7902(a).

*Academy*, 625 S.W.3d at 31–32 (cleaned up). As a result, the negligent entrustment exception cannot apply to Plaintiffs' claims. *See also* Dkt. 44 at pgs. 5–20. The claims are, instead, barred under the PLCAA.

## V. The PLCAA does not contain a negligence exception, making Texas's common law on negligence claims irrelevant.

Relying on *Peek v. Oshman's Sporting Goods, Inc.*, 768 S.W.2d 841, 845 (Tex. App.—San Antonio 1989, writ denied), Plaintiffs ask the Court to ignore *Academy* and incorrectly argue that their claims may proceed because Texas courts have

recognized a duty of care toward third parties who might be injured by the sale of firearms and ammunition.[17]

The Court is not free to ignore the Texas Supreme Court's holding in *Academy* in favor of finding a common-law duty on the part of a gun seller based on a 1989 case from the San Antonio Court of Appeals. *See, e.g., Matter of Ritz*, 832 F.3d 560, 567 n.5 (5th Cir. 2016) ("In resolving issues of state law, 'we are bound to apply the law as interpreted by the state's highest court.'") (quoting *Barfield v. Madison Cty.*, 212 F.3d 269, 271–72 (5th Cir. 2000)); *Am. Intern. Specialty Lines Ins. Co. v. Rentech Steel LLC*, 620 F.3d 558, 564 (5th Cir. 2010) (quoting *Barfield*, 212 F.3d at 271–72; *In re Endeavor Highrise, L.P.*, 432 B.R. 583, 661 (S.D. Tex. 2010) ("When applying state law, a federal court is bound by decisions of the given state's highest court.") (citing *Cochran v. B.J. Servs. Co.*, 302 F.3d 499, 501–02 (5th Cir. 2002)).

In any event, *Peek* offers no help. First, the *Peek* court held that a seller had no reason to anticipate a buyer's intent to commit a crime despite allegations that the purchaser was nervous, uptight, and in a hurry. *Peek*, 768 S.W.2d at 847. Similar allegations are at issue in this case, meaning *Peek* undermines Plaintiffs' theory.

Second, and more importantly, *Peek* was decided in 1989—before Congress enacted the PLCAA. Indeed, *Peek* and the line of cases Plaintiffs cite relying on it are

---

[17]     Additionally, Plaintiffs argue that negligent entrustment is different from "the *Peek* rule," but in the same brief, they argue that Texas recognizes negligent entrustment because of *Peek*. *Compare* Dkt. 64 at pg. 13 ("Negligence in transferring or supplying firearms under the *Peek* rule and negligent entrustment are distinct theories of recovery in Texas.") with pg. 20 ("The negligence claims recognized by the *Peek* rule and asserted by the plaintiffs here clearly meet [the PLCAA's definition of negligent entrustment].")." Of course, these positions are inconsistent. Plaintiffs cannot have it both ways.

26

the types of cases that led Congress to provide statutory immunity for harm "caused by the misuse of firearms by third parties" and prohibit ordinary negligence claims. 15 U.S.C. § 7901(a)(3). Through the PLCAA, "Congress clearly intended to preempt common-law claims, such as general tort theories of liability." *Ileto*, 565 F.3d at 1135. The Ninth Circuit explained as much in *Ileto*. And, it further stated that the "judicial evolution" endemic to common law—and the possibility that it would be used to "expand civil liability in a manner never contemplated by the framers of the Constitution, by Congress, or by the legislatures of the several States"—"was precisely the target of the PLCAA." *Id.* (quoting 15 U.S.C. § 7901(a)(7)) (quotation marks omitted).

As a result of the enactment of the PLCAA, Plaintiffs cannot maintain any common law negligence claims—no matter how styled and no matter whether *Peek* recognized any duty on the part of a firearms dealer (which Oasis disputes). The PLCAA preempts all general negligence actions and common-law claims resulting from the criminal or unlawful use of a qualified product. *Delana v. CED Sales, Inc.*, 486 S.W.3d 316, 321–22 (Mo. 2016) ("PLCAA expressly preempts all general negligence actions seeking damages resulting from the criminal or unlawful use of a firearm, including those involving 'concurrent causation'"); *Estate of Kim ex rel. Alexander v. Coxe*, 295 P.3d 380, 386 (Alaska 2013); *Jefferies v. District of Columbia*, 916 F. Supp. 2d 42, 46 (D.D.C. 2013); *see also Ileto*, 565 F.3d at 1135–36 ("Congress clearly intended to preempt common-law claims, such as general tort theories of liability").

27

The Missouri Supreme Court considered whether the PLCAA prohibits general negligence claims and rejected similar assertions in *Delana v. CED Sales, Inc.*, 486 S.W.3d 316 (Mo. 2016) (en banc).  The Alaska Supreme Court considered similar arguments in *Estate of Kim ex rel. Alexander v. Coxe*, 295 P.3d 380 (Alaska 2013). Both found the plaintiffs' general negligence claims were qualified civil liability actions subject to immediate dismissal under the PLCAA.  *Delana*, 486 S.W.3d at 321; *Coxe*, 295 P.3d at 386, 388.

The plain language of the PLCAA reveals an intent by Congress to bar any qualified civil liability action not falling within a statutory exception.  *Coxe*, 295 P.3d at 388.    While Plaintiffs' negligence claim seeks damages for Oasis's alleged negligence, it is also premised on damages resulting from the criminal or unlawful misuse of qualified products by the Shooter.  Such claim is a general negligence claim barred by the PLCAA.  Plaintiffs do not argue against this settled line of authorities. Accordingly, the PLCAA provides Oasis immunity from Plaintiffs' common-law and general tort theories, and Plaintiffs' claims must be dismissed to the extent they are considered generic, negligence claims.

Finally, a brief word on the "*Peek*" authority cited by Plaintiffs.  Five cases, including *Peek*, were decided before Congress enacted the PLCAA and before the Texas Supreme Court issued its opinion in *Academy*, which is binding Texas precedent.  *Infra* at pg. 28.  None of these five cases support the existence of a post-PLCAA common law duty.  *See Hulsebosch v. Ramsey*, 435 S.W.2d 161 (Tex. Civ. App.—Houston [14th Dist.] 1968, no writ) (Affirming summary judgment in favor of

dealer who sold gun and ammunition to sixteen-year-old, explaining "in an action by the injured third party against the sellers of a rifle, when a parent had permitted the sale of the rifle to the sixteen-year old minor as a Christmas gift to his father, no liability for damages can arise on the part of the sellers in the absence of a statute creating such liability.  Texas has no such statute."); *Wal-Mart Stores, Inc. v. Tamez*, 960 S.W.2d 125, 130 (Tex. App.—Corpus Christi 1997, no writ) (Reversing judgment of trial court because there was no evidence seller breached any duty by selling ammunition to minor); *Bryant v. Winn-Dixie Stores, Inc.*, 786 S.W.2d 547 (Tex. App.—Fort Worth 1990, writ denied) (Declining to recognize a duty of care in the sale of ammunition and discussing obligations related to sale of firearms under Gun Control Act, not common law, in dicta); *Love v. Zales Corp.*, 689 S.W.2d 282 (Tex. App.—Eastland 1985, writ ref'd n.r.e.) (Affirming summary judgment in favor of gun dealer based on statute of limitations.  The court's opinion does not recognize the existence of any duty or standard of care in connection with the sale of a firearm).

Only three of the cases post-date the PLCAA.  And, of those three cases, only one post-dates *Academy*.  Again, none suggest Plaintiffs' common-law negligence claims can proceed past the immunity conferred to Oasis under the PLCAA.  The three cases that post-date the PLCAA are summarized below:

| | |
|---|---|
| *Rodriguez v. Acad., Ltd.*, 694 S.W.3d 780, 787 (Tex. App.—Houston [14th Dist.] 2024), review denied (Sept. 27, 2024) | Affirmed summary judgment in favor of Academy in connection with sale of handgun to a person who used the firearm to commit suicide.  Academy moved for summary judgment, raising the PLCAA and statutory affirmative defense, Tex. Civ. Prac. & Rem. Code § 93.001(a)(2).  The affirmative defense required Academy to show it did not know or have reason to know the purchaser was disqualified under 18 U.S.C. § 922(d)(3), (5).  The Court of |

| | Appeals held Academy established its affirmative defense as a matter of law. The Court did not consider the PLCAA as an independent ground on which to affirm the trial court's order granting summary judgment to Academy. 694 S.W.3d at 788 ("Accordingly, section 93.001's affirmative defense bars Rodriguez's claims. We overrule Rodriguez's fourth issue, and we do not reach his first two issues challenging summary judgment on the basis of PLCAA."). |
|---|---|
| *Tisdale v. Pagourtzis*, No. 3:20-CV-140, 2020 WL 7170491 (S.D. Tex. Dec. 7, 2020) | Order remanding a case from federal court to state court. The remand order addressed whether federal law was necessary in resolving Plaintiffs' claims for purposes of federal question jurisdiction. The district court did not consider the application of the PLCAA to Plaintiffs' claims, whether their pleadings established any exception to PLCAA immunity, or whether an ordinary negligence claim was otherwise well-pled. |
| *Reyna v. Acad., Ltd.*, No. 01-15-00988-CV, 2017 WL 3483217 (Tex. App.—Houston [1st Dist.] Aug. 15, 2017, no pet.)[18] | Affirmed summary judgment in favor of Academy in connection with sale of gun used in crime. However, Academy did not move for summary judgment or raise the PLCAA as a defense to the case. As a result, Plaintiff does not suggest negligence is a viable exception to the PLCAA. |

[18]    Plaintiffs attempt to draw on the Texas Supreme Court's denial of a petition for writ of mandamus to support the (non-existent) *Peek* rule. *See* Dkt. 64 at pg. 13, n.6. The Court should reject any inferences the Plaintiffs suggest it draw from that case. The issue in *LuckyGunner* was whether the plaintiffs sufficiently plead a violation of 18 U.S.C. 922(x)(1) for purposes of the PLCAA's predicate exception and negligence per se exception. *See Rosie Yanas et al. v. Antonios Pagourtzis, et al.*, Consolidated Cause No. CV-0081158, County Court at Law No. 3 at Galveston County, Texas. Section 922(x)(1)(B) prohibits the transfer of ammunition "suitable for use only in a handgun" to a person the "transferor knows or has reasonable cause to believe" is a juvenile. The plaintiffs argued that they plead a violation of the statute because they alleged an online seller of ammunition, LuckyGunner, sold .38 special ammunition to a juvenile without inquiring into the purchaser's age and that LuckyGunner should have known the purchaser was underage because he paid with a gift card. LuckyGunner moved to dismiss under Tex. R. Civ. P. 91a because there is no duty of inquiry embedded into the statute and a common payment method is not indicative of age. The trial court denied LuckyGunner's motion. LuckyGunner petitioned for a writ of mandamus following the denial of its motion. The Texas Supreme Court denied the petition without any written opinion in February 2022. Contrary to Plaintiffs' representations at footnote 6 of their Response, the denial of a petition for writ of mandamus from a court of discretionary review infers nothing—certainly not that the Texas Supreme Court intended to depart from a written, published opinion that it issued eight months earlier. Texas precedent is not made through one-line denials of petitions for writ of mandamus. It is made

Of course, every intermediate court of appeals in Texas is bound by the decisions of the Texas Supreme Court.  *See Owen v. Jim Allee Imports, Inc.*, 380 S.W.3d 276, 284 (Tex. App.—Dallas 2012, no pet.) ("The hierarchy of the courts of Texas is established constitutionally.") (citing Texas Constitution, which states that Supreme Court's appellate jurisdiction shall be final and extend to all cases except in criminal matters).  That reason alone is sufficient for *Academy* to override the *Peek* line of cases, which are all cases from intermediate appellate courts.  But also, the Texas Supreme Court need not expressly overrule a case for that case to no longer be applicable law.  *See, e.g.*, *PPG Indus., Inc. v. JMB/Houston Centers Partners Ltd. P'ship*, 146 S.W.3d 79, 86 n.27 (Tex. 2004) (recognizing that one Texas Supreme Court case "appears to overrule" another).  This District Court has recognized this principle in the federal context, noting that a supreme court decision can overrule prior precedent either expressly or implicitly.  *U.S. v. Rice*, 719 F. Supp. 3d 618, 630 (W.D. Tex. 2024).  Implicit overrulings occur when an intervening supreme court decision fundamentally changes the focus of the relevant analysis followed in the intermediate appellate court's previous decisions, or when an intervening supreme court decision "disavows the mode of analysis on which [the] precedent *relied*."  *See Rice*, 719 F. Supp. 3d at 630 (alteration and emphasis in original) (quoting *Stokes v. Sw. Airlines*, 887 F.3d 199, 204 (5th Cir. 2018); citing *Hoskins v. Bekins Van Lines*, 343 F.3d 769,

---

through written opinions like *Academy*.  Finally, unlike *LuckyGunner*, the plaintiffs in this case have not plead any violation of a federal or state statute for purposes of the predicate or negligence per se exceptions.  Instead, their claims are the garden variety negligent entrustment claims that the Texas Supreme Court rejected in *Academy*.

31

775 (5th Cir. 2003) (recent supreme court decision overruled the analysis used in a prior Fifth Circuit decision)).  Here, *Academy* clearly overrules the *Peek* line of cases. This Court cannot ignore *Academy*.  Thus, this Court should recognize that Texas does not provide a negligence exception to the PLCAA[19].

## VI.   Plaintiffs should not be entitled to re-plead and cannot circumvent the PLCAA.

Plaintiffs should not be granted leave to amend.  Plaintiffs have amended their complaint once already.  *See* Dkt. 9.

Just as problematic, the amendment Plaintiffs allude to would be futile. Courts may "deny leave to amend . . . if the defects are incurable or the plaintiffs have already alleged their best case."  *Pierce v. Hearne Indep. Sch. Dist.*, 600 Fed. Appx. 194, 200 (5th Cir. 2015).  The Court should deny Plaintiffs an opportunity to amend because they have failed to set forth any allegation that avoids the grounds for dismissal.  The defects in Plaintiffs' complaint are incurable, and Plaintiffs have already alleged their best case.  Plaintiffs' best case is barred by the PLCAA, and thus, amendment would be futile.  This Court should dismiss Plaintiffs' claims against Oasis with prejudice.

---

[19]    The Court need not reach the issue of whether Plaintiffs stated viable claims under common law because the PLCAA applies and bars all claims raised in this case. Nevertheless, with respect to common law theories, Oasis relies on its prior briefing and incorporates by reference Dkt. 53 (EOTech's Motion to Dismiss), Dkt. 45 (Daniel Defense's Motion to Dismiss), and Dkt. 44 (Daniel Defense's Response to Motion to Remand) and their arguments concerning why Plaintiffs have failed to state a claim under Texas law for (1) claims for common law negligence/negligent entrustment, Dkt. 9 at ¶¶ 553–72, or (2) gross negligence, Dkt. 9 at ¶¶ 573–76.

4931-8679-3478.1

**CONCLUSION**

For these reasons, Oasis asks the Court to grant Oasis's Motion to Dismiss Plaintiffs' First Amended Complaint (Dkt. 30) and order the immediate dismissal with prejudice of Plaintiffs' claims against Oasis.

33

Respectfully submitted,

**GRAY REED**

*/s/ A.M. "Andy" Landry, III*
A.M. "Andy" Landry III
State Bar No. 11868750
J.J. Hardig, Jr.
State Bar No. 24010090
1300 Post Oak Blvd., Suite 2000
Houston, Texas 77056
(713) 986-7000 (Telephone)
(713) 986-7100 (Fax)
Email: alandry@grayreed.com
Email: jhardig@grayreed.com

-and-

**JEFFERSON CANO**

*/s/ Lamont A. Jefferson*
Lamont A. Jefferson
State Bar No. 10607800
Emma Cano
State Bar No. 24036321
122 E. Pecan St., Suite 1650
San Antonio, Texas 78205
(210) 988-1808 (Telephone)
(210) 988-1808 (Fax)
Email: ljefferson@jeffersoncano.com
Email: ecano@jeffersoncano.com

**ATTORNEYS FOR DEFENDANT
OASIS OUTBACK, LLC**

34

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was electronically served upon all counsel of record through the CM/ECF system on this 18th day of December, 2024.

*/s/ A.M. "Andy" Landry, III*
A.M. "Andy" Landry, III